**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ESTATE OF PATRICIA COBIGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 3807 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation | ) | JUDGE ST. EVE |
| CHICAGO POLICE OFFICERS RENE | ) | |
| DIMILANTA, PIOTR CZARNIECKI, | ) | |
| NICOLE HENRY, DWAYNE COLLIER, | ) | |
| LEAH TOBECK, JACALYN DOYLE, GERALD | ) | |
| GANEY, JULIA LAWLER, THOMAS | ) | |
| MOTZNY, CONNIE HARTFORD, CANDACE | ) | |
| MILOVICH, KAREN JOHNSON, ANNE | ) | |
| BELLUOMINI, ELAINE VABKOS, OLIVE | ) | |
| DICKEY, THOMAS CLARK, JOHN MURPHY, | ) | |
| CHICAGO POLICE DEPARTMENT | ) | |
| CIVILIAN DETENTION AIDES ALICIA | ) | |
| VELEZ, PRISCILLA JONES, and MARIA | ) | |
| DIAZ, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants John Murphy ("Murphy"), Gerald Ganey ("Ganey"), Thomas Clark ("Clark"), Jacalyn Doyle ("Doyle"), Olive Dickey ("Dickey"), Thomas Motzny ("Motzny"), Renee Dimilanta ("Dimilanta"), Piotr Czarniecki ("Czarniecki"), Nicole Henry ("Henry"), Dwayne Collier ("Collier"), Leah Tobeck ("Tobeck"), Connie Hartford ("Hartford"), Candace Milovich ("Milovich"), Karen Johnson ("Johnson"), Anne Belluomini ("Belluomini"), Elaine Vabkos ("Vabkos"), Alicia Velez ("Velez"), Priscilla Jones ("Jones"), and Julia Lawler ("Lawler"), by their attorney, Alec M. McAusland, Senior Asst. Corporation Counsel, and defendant Maria Diaz ("Diaz"), by her attorney, Tiffany Y. Harris, Assistant Corporation Counsel, and the defendant

City of Chicago (City"), by its attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, move this Honorable Court pursuant to Fed. R. Civ. P. 56(b) for judgment in their favor.

**Statement of the Case**

This action arises out of the death of Patricia Cobige following her arrest and subsequent death in a police lock-up. Count I alleges the defendants violated plaintiff's right to due process under the 14th Amendment by virtue of their failure to obtain medical care for plaintiff's decedent, Patrica Cobige ("Cobige"). Count II alleges defendants Henry and Collier violated plaintiff's 4th Amendment rights by arresting Cobige without probable cause. Count III alleges a conspiracy on the part of all defendants to deny medical care to Cobige. Count IV alleges a <u>Monell</u> claim against the City. Count IV(2)[1] alleges common law false arrest against defendants Collier and Henry. Count V alleges common law intentional infliction of emotional distress against all defendants. Count VI alleges wrongful death against all defendants. Count VII alleges a state law survival claim pursuant to 755 ILCS 5/27-6.

The defendants now move for summary judgment in their favor on Counts I, III, V- VII. The City moves separately for judgment on Count IV, and Collier and Henry move separately on Count II. In total, all defendants move for judgment in their favor on all claims.

**Synopsis of Argument**

Briefly, the defendants contend in this motion that the medical condition of Cobige was not such that they were obliged under 14th Amendment due process to seek medical care for her. Further, even if they were so obliged, there is no evidence that certain of the 20 individual

---

[1] The Second Amended Complaint has two claims designated "Count IV".

defendants either had knowledge of Cogibe's condition, or that Cobige was in need of medical attention at the time those defendants were in contact with her. Because the underlying claims lack merit, the claim for conspiracy to commit those wrongs fails also. Further, the defendants are entitled to qualified immunity on the section 1983 claims.

As to the Illinois law claims, the evidence shows that a lack of legally required medical care was not the cause of Cobige's death, and the defendants are therefore entitled to judgment in their favor on the wrongful death and survival claims. Nor were the actions of the defendants with regard to Cobige wilfull and wanton, and they are therefore entitled to immunity under the Illinois statutes. Further, the defendants' actions did not constitute the tort of intentional infliction of emotional distress, and they are entitled to statutory immunity on that claim as well. The City is entitled to judgment for the same reasons its employees are entitled to judgment in their favor.

**Uncontested Facts**

Following is a brief summary of the uncontested facts. For a full treatment of the uncontested facts, see Defendants' Local Rule 56.1 Statement of Uncontested Facts ("56.1").

Cobige was arrested in possession of heroin the morning of June 10, 2006. 56.1, ¶ 4. Cobige seen and questioned by Motzny, and was taken into the women's lock-up at the Chicago Police Department's 25th District by defendants Diaz and Lawler. 56.1, ¶¶ 6-7. Upon questioning at that time, Cobige reported no illness, and showed no sign of illness. 56.1, ¶ 8. Later that day, Cobige was in a cell with several other arrestees, and she was appeared to be sick to her stomach, but did not vomit and showed no other symptoms. 56.1, ¶¶ 9, 10.

In the morning on June 11, Cobige and the other arrestees were taken in a police wagon to the Cook County Jail and Courthouse for bond hearings. 56.1, ¶ 13. At the jail, Cobige told

guards she was not feeling well, and the guards refused to admit her. 56.1, ¶17. After the guards refused to admit her, Cobige told defendant Dimilanta that she did not want to go to the hospital, but wanted to get back to bond court and see the judge. 56.1, ¶¶ 18-19. Cobige told Dimilanta that she had cramps that would come and go, possibly menstrual cramps. 56.1, ¶ 20. Dimilanta returned Cobige to the 25th District. 56.1, ¶ 21.

Upon her return, Cobige said she felt sick, but did not request to go to the hospital. 56.1, ¶¶ 22, 25. Near 2:00 pm, she reported that she felt better. 56.1, ¶ 26. In the afternoon and evening hours of June 11, Cobige did not appear ill, did not complain of feeling ill, and did not request medical attention. 56.1, ¶¶ 27-28, 32, 35-37. At some point that afternoon, Cobige requested a sandwich. 56.1, ¶¶ 30-31. At approximately 1:15 am, Cobige was found dead, sleeping on the floor of her cell. 56.1, ¶ 39.

Plaintiff's expert cardiologist opines that Cobige died because stress caused by pain could have caused her heart, which had pre-existing heart disease, to go into a fatal arrythmia. 56.1, ¶¶ 44-46. He further opines that the pain would have to have been close in time to Cobige's death to have caused the fatal arrythmia. 56.1, ¶ 48-49. However, there is no evidence of Cobige being in pain in the hours leading up to her death. 56.1, ¶¶ 27-28, 32, 35-37, 51. Cobige's pre-exiting heart condition left her vulnerable to sudden fatal arrythmia at any time, with or without added stress. 56.1, ¶ 50.

**Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P.56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986). "To successfully oppose the motion for summary judgment, the non-movant must do more than raise a 'metaphysical doubt' as to the material facts and instead must present definite competent evidence to rebut the motion." Rossi v. Bower, No. 01 C 2503, 2002 WL 1160151 (N.D. Ill. May 29, 2002), quoting Wolf v. Northwestern Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001), and citing Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001).

**ARGUMENT**

> **I.  Cobige's Symptoms Were Not Sufficient to Require Medical Treatment; the Defendants Are Therefore Entitled to Judgment in Their Favor on Count I**

Cobige's symptoms, specifically, that she felt nauseous and had cramps in her stomach, were not of a magnitude that the Constitution required any of the defendants to obtain medical care for Cobige. All defendants are, therefore, entitled to judgment in their favor on Count I.

In order to make a claim for denial 14th Amendment due process by virtue of denial of medical care, plaintiff must establish that Cobige had an objectively serious medical need, and that each defendant was deliberately indifferent to her medical needs.[2] Jackson v. Illinois Medi-

---

[2] Plaintiff has pled her claim under 14th Amendment due process. The defendants note, however, that following the events that gave rise to this case, the 7th Circuit stated in dicta in Williams v. Rodriguez, 509 F.3d 392, 402-403 (2007) that the 4th Amendment should control questions of denial of medical care of pre-trial detainees who have not yet had a judicial determination of probable cause. The defendants move under the 14th Amendment standard here, as plaintiff has pled that standard, and the Williams decision, which - only in dicta - arguably over-rules Jackson v. Illinois Medi-Car, 300 F.3d 760 (7th Cir. 2002) had not yet been rendered at the time of Cobige's detention, leaving the 14th Amendment standard applicable at the time.

Car, 300 F.3d 760, 764-65 (7th Cir. 2002).  A "serious" medical need, for 14th Amendment due process purposes, is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id., quoting Gutierrez v. Peters, 111 F.3d 1364, 1371 (7th Cir. 1997).  "Deliberate indifference", for 14th Amendment due process purposes is "simply a synonym for intentional or reckless conduct, and . . . 'reckless' describes conduct so dangerous that the deliberate nature of the defendants' actions can be inferred."  Jackson at 765, quoting Qian v. Kautz, 168 F.3d 949, 955 (7th Cir. 1999).

     The uncontested facts do not support an "objectively serious medical need."  Before going to court, Cobige appeared to be in pain, sometimes bent over, and stated she was feeling sick. 56.1, ¶ 9.  But that was the extent of her symptoms.  She did not vomit, and she was not sweaty or shaky, nor was her speech slurred.  56.1, ¶ 10.  And during that period, she slept periods of a couple hours at a time. 56.1, ¶ 10.  Walking to the transport wagon that would take her to bond court, she was slumped down, and walked slowly. 56.1, ¶ 13.  She slept in the wagon. 56.1, ¶ 15. At bond court, she squatted down, and when patted down told a guard she felt sick. 56.1, ¶ 17.

     After being rejected at bond court, Cobige declined Dimilanta's offer to take her to the hospital, and showed interest in remaining at bond court in order to see the judge. 56.1, ¶¶ 18-19, 21.  Cobige told Dimilanta she had cramps that would come and go, possibly menstrual cramps. 56.1, ¶ 20.  Upon her return to the police station, Cobige again said she felt sick, but did not request to go to the hospital.  56.1, ¶ 22-25.  Shortly before 2:00 pm that day, she stated, standing by the door of her jail cell, that she was feeling better.  56.1, ¶ 26.  In the hours following, and before her being found dead of cardiac arrythmia at 1:15 am, Cobige did not report feeling sick

and showed no symptoms of illness. 56.1, ¶¶ 27-28, 32, 35-37.

None of Cobige's symptoms was "so obvious even a lay person would recognize the necessity for a doctor's attention." Jackson, 300 F.3d at 765. In the normal course of life, when a person has an upset stomach or cramps, she rarely if ever seeks out a doctor or an emergency room. It is common knowledge these are conditions one suffers through, and they pass without the assistance of a doctor or emergency room. Because Cobige's symptoms did not reach the level of an "immediate medical need" at which point, under the Constitution, any of the defendants was required to obtain medical care, all defendants are entitled to judgment in their favor on Count I.

**II.     Even if Cobige's Right to Be Given Medical Care May Have Been Violated, Certain Defendants Cannot Be Liable For Failing to Obtain Medical Care for Cobige.**

Even if Cobige's symptoms arguably rose to the level at which she was entitled to be provided medical care, not all of the 20 defendants plaintiff has named - who range from the Captain of the 25th District down to the Detention Aides assigned to the women's lock-up - were in a position in which they were required to seek care on Cobige's behalf. Some were on duty during periods when Cobige showed no symptoms of illness. Some had no knowledge of Cobige's symptoms. None can be liable on Count I for failing to obtain medical care for Cobige, or for the Count V-VI Illinois law claims.

It is well settled that to establish liability under section 1983, a defendant must be shown to have been personally involved in the allged constitutional violation. See Martin v. Tyson, 845 F.2d 1451, 1455 (7th Cir. 1988) (no personal involvement precludes liability under section 1983), cert. denied, 488 U.S. 863 (1988); Eades v. Thompson, 823 F.2d 1055, 1063 (7th Cir. 1987)

("Each individual defendant can only be liable for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group"); <u>Walker v. Rowe</u>, 791 F.2d 507, 508 (7th Cir. 1986), <u>cert. denied</u> 479 U.S. 994 (1986); <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional deprivation.").

The same principle applies to the Count V-VII Illinois law claims. 745 ILCS 10/2-204. For this reason, and for the reasons identified below in sections V-VI, the following defendants are entitled to judgment in their favor on the Illinois law claims.

Following is a list of those who cannot be liable for failing to provide medical care to Cobige because they had no personal involvement in the claimed constitutional violation

### A. Defendants Collier and Henry

There is no evidence Collier or Henry had any contact with Cobige after they turned custody of her over to Diaz and Lawler. 56.1, ¶ 4.

### B. Defendant Ganey

Ganey was the Watch Commander of the 25th District police station from 9:30 pm on June 10, to 5:30 June 11, and the same hours June 11-12, and made a brief inspection of the women's lock-up twice on June 10-11, and once the evening of June 11, before Cobige was found dead. 56.1, ¶ 42. There is no evidence Ganey had any knowledge Cobige was feeling sick, or might need medical attention.

### C. Defendant Doyle

Doyle was the Desk Sergeant at the 25th District from 9:30 pm on June 11 through 5:30 am

on June 12.  Doyle toured the women's lock-up at 10:30 pm on June 11, and noted nothing unusual about any of the arrestees, and no one asked her for medical attention. Doyle was informed of Cobige's death at approximately 1:15 am on June 12.  56.1, ¶ 43.  There is no evidence Doyle had any knowledge Cobige was feeling sick, or might need medical attention, or that Cobige was actually feeling sick at the time.

### D.   Defendants Dimilanta and Czarnieki

Dimilanta and Czarnieki transported Cobige and other prisoners to bond court the morning of June 11.  56.1, ¶ 14.  When informed that Cobige would not be taken before the judge, Dimilanta interviewed her, and she informed him that though she had cramps, she did not want to go to the hospital, and she wanted to go back and get before the judge.  56.1, ¶ 17-19, 21.  Dimilanta and Czarnieki offered plaintiff medical attention, and she refused the offer.  56.1, ¶ 19-21.

### E.   Defendants Tobeck and Jones

Tobeck and Jones were the women's lock-up keepers the night of June 11-12.  At no time prior to her being found unresponsive did Cobige exhibit any signs of illness.  56.1, ¶ 34-37.

### F.   Defendants Hartford & Milovich

Hartford and Milovich were the women's lock-up keepers the afternoon of June 11.  At no time during their shift did Cobige exhibit any signs of illness, and in fact requested a sandwich and was conversing with her cellmate.  56.1, ¶ 30-32.

### G.   Defendant Murphy

Murphy was the police Captain at the 25th District, and was on duty as Watch Commander on June 10, from 1:30 pm to 9:30 pm.  Murphy checked the women's lock-up twice during that

time, and noted nothing unusual.  56.1, ¶ 41.

### III.     The Defendants Are Entitled to Judgment in Their Favor on The Conspiracy Claim

Count III alleges that all defendants conspired among themselves to not obtain medical care for Cobige.  Because, as argued above in Section I, plaintiff cannot support the claim that the defendants violated the 14th Amendment, the defendants cannot be liable for any conspiracy to commit the same acts.  Nor can plaintiff support with actual evidence the claim that the defendants conspired among themselves to not obtain medical care for Cobige.

For these reasons, the defendants are entitled to judgment in their favor on Count III.

### IV.     The Defendants Are Entitled to Qualified Immunity on Count I

Whether or not a police officer is entitled to qualified immunity is a matter of law for the court to decide.  Whitte v. Smith, 832 F.2d 451, 453 (7th Cir. 1987).  "The doctrine of qualified immunity shields public officials performing discretionary functions from liability for civil damages where their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Jones v. Watson, 106 F.3d 774, 778 (7th Cir. 1997) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818) (1982)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).  Police officers are entitled to qualified immunity if the plaintiff fails to show that the officer's conduct violated a constitutional right or if the right allegedly violated was not clearly established. Saucier v. Katz, 533 U.S. 194, 201-03 (2001).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.   The law must "put the officer on notice that his conduct would be clearly

unlawful, [otherwise] summary judgment on qualified immunity is appropriate.  Id. at 2156-57.

In this matter, on the Count I claim for denial of medical care, plaintiff cannot show that it was clearly established that an arrestee who was suffering from stomach discomfort, without more, would be constitutionally entitled to medical care.

## V.     The Defendants Are Entitled to Summary Judgment on the Count VI Wrongful Death Claim and the Count VII Survival Claim

### A.     Cobige's Death Was Not Caused by Any Wrongful Act

It is an elementary point: in order to make a claim for wrongful death under Illinois law, the claimant must be able to demonstrate that the actions of the defendant caused the death of the decedent.  740 ILCS 180/1 ("Whenever the death of a person shall be caused by wrongful act . . . .") (emphasis added).  Plaintiff cannot show in this case that the claimed failure to render medical care to Cobige caused her death, and thus the defendants are entitled to judgment in their favor on the Count VI wrongful death claim.  Likewise, plaintiff must be able to succeed on the wrongful death claim in order to be able to claim Count VII survival damages brought under 755 ILCS 5/27-6 (providing that actions for personal injury survive death of injured party).

Plaintiff's expert cardiologist, Dr. Dan Fintel ("Fintel"), offers the opinion that Cobige's death was due to sudden arrythmia in a setting of hypertensive heart disease and an enlarged heart.  56.1, ¶¶ 44, 45.  Fintel further opines that the stress of having stomach cramps may have been sufficient to cause a surge of adrenalin which, in turn, could have caused the fatal arrythmia.  56.1, ¶ 46.  However, for the pain-caused stress to have caused arrythmia, Cobige would have to have been experiencing that pain shortly before the arrythmia caused her death.  56.1, ¶ 48, 49.  Finally, Fintel opines that even in the absence of some specific stress, arrythmia could have set in

and killed Cobige at any time. 56.1, ¶ 58.

Even crediting each of Fintel's opinions, none of the defendants can be said to have caused Cobige's death, as there is no evidence Cobige was suffering stomach cramps, or any other condition for which medical care needed to be rendered, at the time of her death. 56.1, ¶¶ 27-28, 32, 35-37, 51. Even under Fintel's view - the view most favorable to the plaintiff - failure to get Cobige medical care for stomach cramps she was <u>not</u> suffering in the hours preceding her death could not have caused Cobige's fatal arrythmia and subsequent death.

### B. The Defendants Are Immune From Liability for Wrongful Death

The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") provides that:

> "Neither a local public entity nor a public employee is liable for injury proximately caused by the failure to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care."

745 ILCS 410/4-107.

With regard to the wrongful death claim of Count IV, the defendants in this case are entitled to the immunity of section 4-107 because, first, none of them observed any condition requiring medical care at or about the time of Cobige's death. Second, the defendants are entitled to section 4-107 immunity because, even if they observed plaintiff suffering stomach cramps at or about the time of Cobige's death, their failure to obtain medical care for her was not wilfull and wanton in nature.

The Tort Immunity Act defines "wilfull and wanton" as follows: "a course of action which

shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.  This is a high standard: "A qualitative difference necessarily exists between willful and wanton misconduct and ordinary negligence.  Willful and wanton misconduct should shock the conscience . . . " <u>Oravek v. Community School Dist. 146</u>, 264 Ill. App. 3d 895, 900, 637 N.E.2d 554, 557 (1st Dist. 1994).

      With regard to the wrongful death claim, plaintiff can point to no evidence which would establish that Cobige was suffering any sort of stomach pains (or other medical difficulties) in the minutes, or even hours leading up to her death.  56.1, ¶¶ 27-28, 32, 35-37.  It is Fintel's opinion, sponsored by plaintiff, that the defendants' neglect of Cobige's stomach pains, stomach pains she would have to have been suffering close to the time of her death, caused plaintiff's death.  56.1, ¶ 46.  But without evidence plaintiff was actually suffering stomach pains at the time Fintel makes relevant, that is, in the short time before her death needed for the pains to have caused the fatal arrythmia, 56.1, ¶ 48, plaintiff cannot establish the defendants knew Cobige was in "immediate need of medical care."  Nor can any failure of the any of the defendants to seek medical care for plaintiff during the relevant period be said to have been wilfull and wanton.  As argued above, there is no evidence that Cobige was suffering any immediate need for medical care, or that the defendants should have been able to diagnose Cobige's heart condition, 56.1, ¶ 55, and thus the defendants cannot be said to have shown "deliberate indifference to, or conscious disregard for" Cobige's safety.  The defendants were not wilfull and wanton, and are therefore immune from liability pursuant to section 10/4-107.

**VI.     The Defendants Are Not Liable for Intentional Infliction of Emotional Distress**

Under Illinois law, in order to allege intentional infliction of emotional distress ("IIED"), a plaintiff must allege: (1) extreme and outrageous conduct, (2) intent to inflict severe emotional distress or knowledge that such distress is highly probable, and (3) that the defendant's conduct did in fact cause severe emotional distress.  McGrath v. Fahey, 126 Ill.2d 78 (1988).

"The nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." Dunn v. City of Elgin, 347 F.3d 641, 651 (7th Cir. 2003).  Furthermore, the distress endured as a result of such conduct must be so outrageous that no reasonable person could be expected to endure it.  Lifton v. Bd. of Educ. of Chi., 416 F.3d 571, 581 (7th Cir. 2005).

In this case, plaintiff's Count V IIED claim is premised on the alleged failure of thedefendants to obtain medical care for Cobige.  The evidence is that Cobige felt sick to her stomach, and no more.  Even taken in the light most favorable to plaintiff, the facts simply do not rise to the level of "extreme and outrageous".  In the normal course of life, when a person has an upset stomach or cramps, she rarely if ever seeks out a doctor or an emergency room.  It is common knowledge these are conditions one suffers through, and they pass without the assistance of a doctor or emergency room.  It cannot, therefore, be "extreme or outrageous" for the defendants in this case to have not gotten Cobige medical attention for her symptoms.

Further, where - as here - the IIED claim is premised on a failure to obtain medical care for an arrestee, the immunity of 745 ILCS 5/4-107 applies: where the conduct was not "wilfull and wanton" within the meaning of the 745 ILCS 5/1-210, the defendants are immune from liability.  As argued above, section V(B), the defendants' actions were not wilfull and wanton.  Moreover,

the defendants could not have diagnosed Cobige's hypertension, or known that stomach distress could have tipped her into a fatal heart attack. 56.1, ¶ 55. For that additional reason, the defendants are entitled to summary judgment on the Count V IIED claim.

**VII.    The City Cannot Be Liable Where the Individual Defendants Are Not Liable**

Where, as argued above, the individual defendants cannot be liable on the Illinois law claims, Counts V-VII, the City cannot be liable. 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

**CONCLUSION**

For the foregoing reasons, the defendants are entitled to judgment in their favor on Counts I, III, V- VII.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago


By:  _/s/ Rita M. O'Connor /s/_           _/s/ Alec M. McAusland /s/_           _/s/ Tiffany Y. Harris /s/_
for the defendant City                    for defendants Murphy, Ganey,          for defendant Diaz
30 North LaSalle, #1020                   Doyle, Dickey, Motzny,                 30 North LaSalle, #1400
Chicago, IL 60602                         Dimilanta, Czarnieki, Henry,           Chicago, IL 60602
(312) 744-4647                            Collier, Tobeck, Hartford,             (312) 744-5890
Atty No. 06270301                         Milovich, Hartford, Johnson            Atty No. 06238533
                                          Belluomini, Vabkos, Velez,
                                          Jones and Lawler
                                          30 North LaSalle, #1400
                                          Chicago, IL 60602
                                          (312) 744-4038
                                          Attorney No. 06202724

## CERTIFICATE OF SERVICE

I, Alec M. McAusland, an attorney, certify that I have this 17th day of March, 2009, caused the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** to be served upon all parties who have appeared in this matter via the CM/ECF electronic filing and email notification system.

<u>*/s/ Alec M. McAusland /s/*</u>