**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MAURICE COBIGE, as Son, Next Friend, and Special Representative of the estate of PATRICIA COBIGE, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.  06 C 3807 |
| v. | ) ) ) | |
| CITY OF CHICAGO, a municipal corporation, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

AMY J. ST. EVE, District Court Judge:

On April 30, 2007, Plaintiff Maurice Cobige, as Son, Next Friend, and Special Representative of the estate of Patricia Cobige, deceased, brought the present eight-count Second Amended Complaint alleging constitutional violations under 42 U.S.C. § 1983, as well as state law claims pursuant to the Court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).  Plaintiff voluntarily dismissed certain claims.[1]  Plaintiff's remaining claims include his deliberate indifference/denial of medical care claim (Count I), conspiracy claim (Count III), Illinois Wrongful Death Act claim (Count VI), Illinois Survival Act claim (Count VII), and a common law intentional infliction of emotional distress claim (Count V).

Before the Court are the Defendants' Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons, the Court grants in part and

---

[1] Plaintiff has voluntarily dismissed his false arrest and false imprisonment claims against Defendant Officers Dwayne Collier and Nicole Henry.  (R. 138-1, Pl.'s Rule 56.1 Resp., at 2.)  Also, Plaintiff voluntarily dismissed his policy claims against the City of Chicago.  (R. 146-1, Pl.'s Resp., at 1.)

denies in part Defendants' summary judgment motions.  Specifically, the Court grants Defendant

City of Chicago's and Defendants Dwayne Collier's and Nicole Henry's summary judgment

motions in their entirety.  The Court thus dismisses Defendants Collier and Henry as Defendants

from this lawsuit.[2]  In addition, the Court grants the individual Defendants' summary judgment

motion as to Plaintiff's conspiracy claim (Count III).  The Court also dismisses Defendants Anne

Belluomini, Thomas Clark, Olive Dickey, Jacalyn Doyle, Gerald Ganey, Connie Hartford, Karen

Johnson, Priscilla Jones, Candace Milovich, John Murphy, Leah Tobeck, Elaine Vabkos, and

Alice Velez as Defendants from this lawsuit because Plaintiff has not established that these

Defendants were personally involved in denying Cobige's constitutional rights, *see Johnson v.

Snyder,* 444 F.3d 579, 583 (7th Cir. 2006), or that they were involved in the conduct comprising

Plaintiff's state law claims.  The Court denies the remainder of the individual Defendants'

summary judgment motion.  Thus, the remaining claims in this lawsuit include Plaintiff's

deliberate indifference claim (Count I), Illinois Wrongful Death Act claim (Count VI), Illinois

Survival Act claim (Count VII), and the common law intentional infliction of emotional distress

claim (Count V).

## BACKGROUND

Patricia Cobige was a 46-year-old African-American woman and resident of Chicago,

Illinois.  (R. 126-1, Defs.' Rule 56.1 Stmt. Facts ¶ 3.)  After Cobige was arrested for possessing

heroin on June 10, 2006, Chicago Police Officers took her to the 25th District Police Station and

left her at the women's lockup.  (*Id*. ¶¶ 4, 5.)  Once in a jail cell at the 25th District Police

---

[2]  Because the City of Chicago is a potential indemnitor of the remaining individual
Defendants, the Court will not dismiss the City of Chicago as a Defendant to this lawsuit at this
time.  *See* 745 ILCS 10/9-102.

Station, Cobige was in pain.  (*Id.* ¶ 9.)  She was bent over at times, and, at other times, she was in a fetal position on the bed.  (*Id.*)  She slept a couple of hours at a time during the night of June 10.  (*Id.*)  Women who were detained with Cobige testified that she was sick.  (R. 138-1, Pl.'s Rule 56.1 Stmt. Facts ¶ 1.)  Cobige told the jail guards that she was sick, but the guards told her that nothing was wrong and that she was only dope sick.  (*Id.*)  A fellow arrestee also testified that she could tell Cobige was ill because Cobige "kept holding her stomach."  (*Id.* ¶ 2.)  Another arrestee testified that Cobige was "doubled over moaning" and that Cobige was "clumped over" and "act[ed] nauseated."  (*Id.*)  According to this arrestee, Cobige said she needed a doctor a dozen times and that Cobige cried out to the guards when they walked by.  (*Id.* ¶ 3.)

On June 11, 2006, police officers gathered the arrestees in Cobige's jail cell, including Cobige, to transport them to bond court.  (Defs.' Stmt. Facts. ¶ 13.)  On the way to the transport wagon, Cobige was slumped down and walked slowly.  (*Id.*; Pl.'s Stmt. Facts ¶ 5.)  Officers Rene Dimilanta and Piotr Czarniecki then transported the female arrestees to bond court.  (Defs.' Stmt. Facts ¶ 14; Pl.'s Stmt. Facts ¶ 4.)  At bond court, Cobige, who squatting down, told a Cook County Sheriff's Deputy that she was sick and that she needed to go to the hospital.  (Pl.'s Stmt. Facts ¶ 6.)  Also, while at bond court, Cobige repeatedly told Officer Dimilanta that she needed to go to the hospital.  (*Id.*)  Because Cobige was sick, she was denied entry to bond court.  (*Id.* ¶¶ 6, 11; Defs.' Stmt. Facts ¶ 17.)

On the way out of bond court to the transport wagon, Officer Dimilanta asked Cobige what was wrong and Cobige said she wanted to go back and see the bond court judge.  (Defs.' Stmt. Facts ¶ 18.)  Officer Dimilanta further testified that he asked Cobige if she wanted to go to the hospital after which Cobige said no.  (*Id.* ¶ 19.)  Also, Officer Dimilanta testified that Cobige

told him she had menstrual cramps and that the pain would come and go.  (*Id.* ¶ 20; Pl.'s Stmt. Facts ¶ 10.)  Meanwhile, Officer Dimilanta contacted Sergeant Thomas Motzny to tell him that Cobige was rejected from bond court because of her illness.  (Pl.'s Stmt. Facts ¶ 11.)

Upon returning to the 25th District Police Station, Defendant Chicago Police Department Civilian Detention Aide Maria Diaz and Officer Julia Lawler were on duty.  (Pl.'s Stmt. Facts ¶ 14.)  Officer Dimilanta informed them, as well as Sergeant Motzny, that Cobige was rejected from bond court because of stomach cramps.  (*Id.* ¶¶ 14, 16.)  Cobige then told Diaz that she was sick and had bad cramps.  (*Id.* ¶ 15; Defs.'s Stmt. Facts ¶ 22.)  Diaz testified that Cobige was slouching, bent over, and looked tired and that she told Officer Lawler that Cobige was sick. (Pl.'s Stmt. Facts ¶¶ 15, 19.)  Officer Lawler made a notation in the lockup log that Cobige was rejected at bond court because she had stomach cramps.  (*Id.* ¶ 16.)  Before Diaz and Officer Lawler finished their shift at 2 p.m., Diaz heard Cobige call out to her from her cell saying that she did not feel well and that she felt sick to her stomach.  (Defs.' Stmt. Facts ¶¶ 23, 24.)  After Diaz and Officer Lawler informed Sergeant Motzny that Cobige was sick, Sergeant Motzny never checked on Cobige to see how she was doing.  (Pl.'s Stmt. Facts ¶ 20.)  At that time, Sergeant Motzny said he was not going to send Cobige to the hospital.  (*Id.* ¶ 22.)

At the end of her shift, Diaz told the officer who relieved her that Cobige was brought back from bond court because she was sick and that Cobige needed medical papers to go to bond court the next day.  (*Id.* ¶ 23.)  Also, Diaz told her replacement to ask the sergeant on the afternoon shift to send Cobige to the hospital after which the relief officer said she would let her sergeant know about Cobige's condition.  (*Id.*)  Moreover, at the end of her shift, Officer Lawler believed that someone on the next watch would get Cobige to the hospital to get her medical

clearance for bond court, although Officer Lawler did not remember communicating this to anyone on the next shift. (*Id.* ¶ 25.) Officer Lawler, however, also testified that she knew the next shift was aware that Cobige had been returned from bond court because of her stomach cramps. (*Id.*)

Defendant Police Officers Connie Hartford and Candace Milovich relieved Diaz and Officer Lawler at lockup on June 11, 2006. (*Id.* ¶ 26; Defs.' Stmt. Facts ¶ 27.) This third shift lasted from 2:00 p.m. until 10:00 p.m. (Pl.'s Stmt. Facts ¶ 26.) After Officer Milovich was informed that Cobige had been sent back from bond court with stomach cramps, she observed that Cobige appeared to be sleeping in the cell and did not attempt to wake her. (*Id.* ¶ 27.) Likewise, Officer Hartford testified that it appeared that Cobige was asleep in the cell and that she did not attempt to wake her. (*Id.* ¶ 28.) At some point during her watch, however, Officer Hartford also testified that she asked Cobige why she was sleeping on the floor in her cell after which Cobige explained it was warmer there. (Defs.' Stmt. Facts ¶ 33.)

On the night of June 11, 2006, Defendant Chicago Police Department Civilian Detention Aide Priscilla Jones relieved Officer Hartford in lockup at approximately 9:55 p.m. (Pl.'s Stmt. Facts ¶ 30; Defs.' Stmt. Facts ¶ 34.) Jones testified that when she first saw Cobige, Cobige looked like she was asleep under the bench in the cell. (Pl.'s Stmt. Facts ¶ 30.) Defendant Police Officer Leah Tobeck did the rest of the inspections on the night shift and never said anything about Cobige. (Defs.' Stmt. Facts ¶ 36.) Later, when Jones entered Cobige's cell after 1:00 a.m. on June 12, 2006, Cobige was in the same position she had been in around 10 p.m. the evening before. (Pl.'s Stmt. Facts ¶ 31.) Shortly thereafter, Jones discovered that Cobige was dead. (*Id.*; Defs.' Stmt. Facts ¶ 39.) Cobige died as a result of a sudden arrhythmia in the

5

context of hypertensive heart disease and an enlarged heart.  (Defs.' Stmt. Facts ¶ 44.)  Plaintiff's

medical expert testified that Cobige's severe abdominal pain caused the release of adrenaline

that led to a life threatening arrhythmia causing Cobige's death.  (Pl.'s Stmt. Facts ¶ 36.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  *Estate of Suskovich v. Anthem*

*Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)).  A

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, 91 L. Ed. 2d 202 (1986).  In determining summary judgment motions, "facts must be

viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as

to those facts."  *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).

The party seeking summary judgment has the burden of establishing the lack of any genuine

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91

L.Ed.2d 265 (1986).  After "a properly supported motion for summary judgment is made, the

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"

*Anderson*, 477 U.S. at 255 (quotation omitted); *see also* Fed.R.Civ.P. 56(e)(2) (requiring adverse

party to "set out specific facts").  At summary judgment, the "court's role is not to evaluate the

weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the

matter, but instead to determine whether there is a genuine issue of triable fact."  *National*

*Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

**I.     Denial of Medical Care – Count I**

**A.     Applicable Standards**

In Count I of the Second Amended Complaint, Plaintiff alleges a due process claim that certain Chicago Police Officers and Chicago Police Department Civilian Detention Aides were deliberately indifferent to Cobige's medical needs resulting in her fatal cardiac arrhythmia.  The Fourteenth Amendment's Due Process Clause applies to pretrial detainees' conditions of confinement claims and entitles pretrial detainees to at least the same protections against deliberate indifference as available to convicted prisoners under the Eighth Amendment.  *See Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cir. 2008).  Under both Eighth and Fourteenth Amendment protections, "[p]rison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs."  *Williams v. Liefer,* 491 F.3d 710, 714 (7th Cir. 2007) (citing *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).  The test for the deliberate indifference to serious medical needs has both an objective and subjective element.  *See Edwards v. Snyder,* 478 F.3d 827, 830 (7th Cir. 2007) (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).  Specifically, a plaintiff must demonstrate: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that medical condition.  *See Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008); *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008).  "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention."  *Hayes*, 546 F.3d at 522; *see also Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008).  To satisfy the subjective element, "it is

7

enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Hayes*, 546 F.3d at 522 (citation omitted).

Although Cobige was a pretrial detainee, there had been no judicial determination of probable cause before her death. Under such circumstances, the objectively reasonable standard of the Fourth Amendment applies to Plaintiff's conditions of confinement claim based on the denial of medical care. *See Lopez v. City of Chicago,* 464 F.3d 711, 718-19 (7th Cir. 2006). As the Seventh Circuit explains:

> [W]e have held that the Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination of probable cause. Our cases thus establish that the protections of the Fourth Amendment apply at arrest and through the *Gerstein* probable cause hearing, due process principles govern a pretrial detainee's conditions of confinement after the judicial determination of probable cause, and the Eighth Amendment applies following conviction.

*Id*. at 719 (citations and quotations marks omitted) (referring to *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); *see also Luck v. Rovenstine,* 168 F.3d 323, 326 (7th Cir. 1999) ("There is, to be sure, a difference between the constitutional provisions that apply to the period of confinement before and after a probable cause hearing: the Fourth Amendment governs the former and the Due Process Clause the latter.")

Because the deliberate indifference standard under the Fourteenth Amendment is a more burdensome standard than the objectively reasonable standard under the Fourth Amendment, the Court addresses Plaintiff's denial of medical care claim under the Fourteenth Amendment for the sake of completeness. *See Lopez,* 464 F.3d at 720; *see also Williams v. Rodriguez,* 509 F.3d 392, 403 (7th Cir. 2007) ("the deliberate indifference standard under the Eighth and Fourteenth Amendments requires a higher showing on a plaintiff's part than is necessary to prove an

8

officer's conduct was 'objectively unreasonable under the circumstances.'").

### B.    Personal Involvement

Before turning to the deliberate indifference standard, the Court addresses Defendants'

argument that certain individual Defendants had no personal involvement in the alleged

constitutional deprivation.  To clarify, "to recover damages under § 1983, a plaintiff must

establish that a defendant was personally responsible for the deprivation of a constitutional

right."  *Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006); *see also Grieveson v. Anderson,*

538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the

defendant personally participated in or caused the unconstitutional actions") (citation omitted).

Because the doctrine of respondeat superior does not apply to Section 1983 claims, a supervisor

"will be deemed to have sufficient personal responsibility if he directed the conduct causing the

constitutional violation, or if it occurred with his knowledge or consent."  *Sanville v.*

*McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) ("This definition recognizes that the individual

does not have to have participated directly in the deprivation.") (citation omitted).

First, it is undisputed that Defendant Officers Dwayne Collier and Nicole Henry had no

contact with Cobige after they arrested her and took her to the 25th District Police Station.

(Def.'s Stmt. Facts ¶ 4.)  Accordingly, Officers Collier and Henry cannot be liable for any denial

of medical care.  Moreover, there are no facts in the record – and Plaintiff makes no arguments

in his legal memorandum – that Defendants Anne Belluomini, Olive Dickey, Karen Johnson,

Elaine Vabkos, and Alicia Velez were aware of Cobige's medical condition or had personal

involvement in the alleged denial of medical care.  *See Steen v. Myers*, 486 F.3d 1017, 1020 (7th

Cir. 2007) (absence of discussion in briefs amounts to abandonment of argument).  Therefore,

Defendants Belluomini, Dickey, Johnson, Vabkos, and Velez cannot be liable for the denial of medical care as alleged in Count I.

Defendants also argue that Officer John Murphy, who was the Watch Commander of the 25th District Police Station on June 10, 2006 from 1:30 p.m. to 9:30 p.m., had no knowledge of Cobige's medical condition or any personal involvement in the alleged constitutional deprivation. Defendants support this argument with facts in the record, (*see* Defs.' Stmt. Facts ¶ 41), and Plaintiff has failed to set forth any evidence to the contrary as required under Federal Rule of Civil Procedure 56(e)(2). Similarly, Defendants present undisputed evidence that Officer Gerald Ganey, who was the Watch Commander during the night shift on June 10, 11, and 12, 2006 had no knowledge of Cobige's medical condition or personal involvement in the denial of medical care. (*Id.* ¶ 42.) Further, Plaintiff did not set forth evidence refuting the fact that Desk Sergeant Jacalyn Doyle was not personally involved in the alleged constitutional deprivation. (*Id.* ¶ 43.) Plaintiff also failed to show that Defendant Officer Thomas Clark, who was also a Watch Commander on June 11, 2006, had notice that Cobige was seriously ill and denied Cobige medical treatment. (*Id.* ¶ 40.) Because there is no evidence in the record that Defendant Officers Murphy, Ganey, Doyle, and Clark were personally involved in the alleged constitutional violation, they cannot be held liable under Count I.

### C.    Deliberate Indifference to Serious Medical Needs

#### 1.    Objective Element

As discussed, to establish the objective element of the deliberate indifference test, Plaintiff must demonstrate that Cobige had a serious medical condition. *See Hayes,* 546 F.3d at 522. A serious medical condition is one that a physician has diagnosed as requiring treatment or

one that is so obvious that a lay person would perceive the need for a doctor's attention.  *See id.*;
*Lee,* 533 F.3d at 509.  As the Seventh Circuit instructs "a prisoner's medical need is 'serious'
where 'the failure to treat a prisoner's condition could result in further significant injury or the
unnecessary and wanton infliction of pain.'"  *Hayes,* 546 F.3d at 522 (citation omitted).
Circumstances indicating that an inmate has a serious medical condition, include the "existence
of an injury that a reasonable doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly affects an individual's daily
activities; or the existence of chronic and substantial pain."  *Id.* at 522-23 (citation omitted).

Despite Cobige's repeated requests to see a doctor, as well as the outward symptoms of
severe abdominal pain, Defendants argue that Plaintiff has failed to establish that Cobige had a
serious medical condition.  Specifically – although Defendants admit that Cobige appeared to be
in pain, was bent over, stated she felt sick, was slumped down, and walked slowly – Defendants
argue that Plaintiff has not established a serious medical condition because Cobige did not
vomit, sweat, or slur her speech.  Defendants also argue that because Cobige did not request to
go to the hospital after bond court on June 11, 2006 and stated that she had menstrual cramps to
Officer Dimilanta, Plaintiff has failed to set forth evidence creating a genuine issue of material
fact for trial concerning Cobige's serious medical condition.

To the contrary, viewing the facts and all reasonable inferences in a light most favorable
to Plaintiff – as the Court is required to do at this procedural posture – Plaintiff has presented
sufficient evidence creating a genuine issue of material fact for trial that Cobige's severe
stomach cramps and abdominal pain were so obvious that even a lay person would know she
needed a doctor's attention.  *See Hayes,* 546 F.3d at 522.  More specifically, Cobige's cell mates

testified that she was bent over at times, and, at other times, was in a fetal position on the bed.

They also testified that Cobige said she was sick and that Cobige told the jail guards that she was

sick. Moreover, a fellow arrestee testified that she could tell Cobige was ill because she "kept

holding her stomach."  Another arrestee testified that Cobige was "doubled over moaning" and

that Cobige was "clumped over" and "act[ed] nauseated."  According to this arrestee, Cobige

said she needed a doctor a dozen times and that Cobige cried out to the guards when they walked

by her cell.

When Officers Dimilanta and Czarniecki took Cobige to bond court the day after her

arrest, she was slumped down and walked slowly.  At bond court, Cobige told a Cook County

Sheriff's Deputy that she was sick and needed to go to the hospital.  Because Cobige was sick,

she was denied entry to bond court.  Upon returning to the 25th District Police Station, Cobige

told Diaz that she was sick and had bad cramps.  Diaz testified that Cobige was slouching, bent

over, and looked tired.  Before Diaz and Officer Lawler finished their shift, Diaz heard Cobige

call out to her from her cell saying that she did not feel well and that she felt sick to her stomach.

Thereafter, Cobige slept under the bench in her cell before Jones discovered that she was dead.

Based on these facts, Plaintiff has established a genuine issue of material fact for trial that

Cobige had a medical condition that significantly affected her daily activities and that she

experienced substantial pain due to this condition.  *See Hayes,* 546 F.3d at 522-23.  Moreover,

Plaintiff's medical expert testified that Cobige's severe abdominal pain released adrenaline that

led to a life threatening arrhythmia causing Cobige's death.  *See Zentmyer v. Kendall County,*

*Ill.,* 220 F.3d 805, 810 (7th Cir. 2000) (expert testimony showing that medical condition led to

permanent loss of hearing created material question of fact whether plaintiff suffered from an

objectively serious medical condition).  Thus, Plaintiff has presented evidence that Cobige's

abdominal pain resulted in "further significant injury" after she was denied medical treatment.

*See Hayes,* 546 F.3d at 522.  Accordingly, Plaintiff has presented sufficient evidence under the

objective element of the deliberate indifferent standard to withstand summary judgment.

### 2.       Subjective Element

Next, Plaintiff must set forth evidence creating a genuine issue of material fact for trial

under the subjective element of a deliberate indifference claim, namely, that the officers knew of

Cobige's serious medical condition and disregarded the substantial risk to Cobige's health.  *See*

*Hayes,* 546 F.3d at 522; *see also Dale v. Poston,* 548 F.3d 563, 569 (7th Cir. 2008) (once

officials know of serious risk of harm, they must take reasonable measures to abate it.)  "[A]

factfinder may conclude that a prison official knew of a substantial risk from the very fact that

the risk was obvious."  *Farmer,* 511 U.S. at 842.  Also, under the subjective component a

plaintiff need not prove that the officers literally ignored the complaints of severe pain, but

"rather, he must show only that the defendants' responses to it were so plainly inappropriate as

to permit the inference that the defendants intentionally or recklessly disregarded his needs."

*Hayes*, 546 F.3d at 524.

As the facts reveal, Defendants Dimilanta, Czarniecki, Motzny, Lawler, and Diaz were

aware that Cobige was ill enough that the Cook County Sheriff's Deputies refused to accept her

in bond court until she was taken to the hospital.  More specifically, while Officers Dimilanta

and Czarniecki escorted the arrestees to bond court, Cobige exhibited outward signs of her

illness and was slumped down and walked slowly.  At bond court, Cobige told a Cook County

Sheriff's Deputy that she was sick and needed to go to the hospital.  Although Cobige wanted to

go back to bond court and answered no when Officer Dimilanta asked if she needed to go to the hospital, evidence in the record reveals that Cobige was warned not to act sick or ask to go to the hospital because the bond court would reject her and the police officers would take her back to the station instead of taking her to the hospital.  (Pl.'s Stmt. Facts ¶ 6; Ex. C, Bridgmon Dep., at 10-13, 26-27; Ex. Flores Dep., at 30-31.)

Meanwhile, upon returning to the 25th District Police Station, Officer Dimilanta informed Diaz, Officer Lawler, and Sergeant Motzny that Cobige was rejected from bond court because of stomach cramps.  Throughout that day, Cobige told Diaz that she was sick and had bad cramps and Diaz testified that Cobige was slouching, bent over, and looked tired.  Diaz told Officer Lawler that Cobige was sick and Officer Lawler noted Cobige's illness on the lockup log.  Moreover, after Diaz and Officer Lawler informed Sergeant Motzny that Cobige was sick, Sergeant Motzny never checked on Cobige to see how she was doing and said he was not going to send Cobige to the hospital.

Construing these facts and all reasonable inferences in Plaintiff's favor, Plaintiff has raised genuine issues of material fact for trial that Defendants Dimilanta, Czarniecki, Diaz, and Lawler knew of the a substantial risk of Cobige's serious medical condition by observing her symptoms of severe abdominal pain knowing of the risk "from the very fact that the risk was obvious."  *See Farmer,* 511 U.S. at 842.  Also, Sergeant Motzny was repeatedly informed of Cobige's condition, yet never checked on Cobige to see how she was doing and decided not to send her to the hospital.  *See Sanville,* 266 F.3d at 740 (supervisor "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent.").  That fact that Defendants did not know

14

Cobige would later die does not ameliorate their knowledge of the seriousness of her medical condition because "a serious medical condition need not be life-threatening," although in this case, it was.  *See Johnson,* 444 F.3d at 585.

In addition, a reasonable factfinder could conclude that ignoring Cobige's need for medical treatment supports the conclusion that Defendants' responses to Cobige's serious medical need "were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs."  *Hayes,* 546 F.3d at 524.  In fact, there is medical evidence in the record that a simple analgesic may have helped ease Cobige's abdominal pain and reduce the level of adrenaline that led to her cardiac arrhythmia.  (Pl.'s Stmt. Facts ¶¶ 36, 38.)  As such, Plaintiff has raised a genuine issue of material fact for trial that Defendants Dimilanta, Czarniecki, Diaz, Motzny, and Lawler were deliberately indifferent to Cobige's serious medical needs.

This leaves Defendant Officers Connie Hartford, Candace Milovich, Leah Tobeck, and Chicago Police Department Civilian Detention Aide Priscilla Jones.  Although these Defendants were put on notice that Cobige had stomach cramps, there is no evidence in the record that they observed any symptoms of Cobige's medical condition.  (Defs.' Stmt. Facts ¶¶ 30-32, 34-37.)  Further, Plaintiff has not presented any other specific facts that these Defendants were aware of the seriousness of Cobige's condition.  *See* Fed.R.Civ.P. 56(e)(2).  Without more, the Court cannot conclude that Plaintiff has presented evidence raising a genuine issue of material fact for trial that Defendants Hartford, Milovich, Tobeck, and Jones were aware of Cobige's serious medical condition and were deliberately indifferent to this condition.  *See Hayes,* 546 F.3d at 522.  Even under the more lenient Fourth Amendment standard, Plaintiff has not established that

15

these Defendants' conduct was objectively unreasonable under the circumstances because there is insufficient evidence in the record that they were aware of the seriousness of Cobige's medical condition in the first instance.  *See Lopez,* 464 F.3d at 718-19; *see also Williams,* 509 F.3d at 402-03.  As such, Defendants Hartford, Milovich, Tobeck, and Jones are not liable under Count I of the Second Amended Complaint.

### D.    Qualified Immunity

Defendants next argue that they are protected from liability by qualified immunity. Under qualified immunity "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Akande v. Grounds,* 555 F.3d 586, 589 (7th Cir. 2009).  The Supreme Court has established a two-step inquiry for resolving qualified immunity claims.  *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Pearson v. Callahan,* ___ U.S. ___, 129 S.Ct. 815-16, 172 L.Ed.2d 565 (2009).  More specifically, in determining whether an official is entitled to qualified immunity, courts must decide:  (1) "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right," and (2) "whether that right was 'clearly established' at the time of the defendant's alleged misconduct."  *Akande,* 555 F.3d at 590 (citing *Saucier,* 533 U.S. at 201).  As the Supreme Court recently clarified, courts need not address the *Saucier* elements in a particular sequence.  *See Pearson,* 129 S.Ct. at 818.

Because Plaintiff has established a genuine issue of material fact for trial that certain Defendants violated Cobige's constitutional right to be free from the deliberate indifference to a

serious medical need under the Fourteenth Amendment, the Court turns to whether this right was clearly established at the time of Defendants' alleged misconduct.  Under this standard, "[t]he contours of [the constitutional] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Chaklos v. Stevens,* 560 F.3d 705, 716 (7th Cir. 2009).  A plaintiff may defeat a qualified immunity defense by pointing "to a clearly analogous case establishing a right to be free from the specific conduct at issue" or by showing that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights."  *Wheeler v. Lawson,* 539 F.3d 629, 640 (7th Cir. 2008) (citations omitted).  The Supreme Court has rejected the notion that analogous cases must be exactly the same before an official is on notice that his conduct was unconstitutional.  *See Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

It is well-established that a pretrial detainee's "right to receive adequate treatment for serious medical needs is a clearly established constitutional right."  *Board v. Farnham,* 394 F.3d 469, 485 (7th Cir. 2005).  The leading Supreme Court case regarding deliberate indifference under the Eighth Amendment was decided in 1976.  *See Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  The Supreme Court discussed pretrial detainees' due process rights to be free from the deliberate indifference to medical needs – which affords at least the same protections under Eighth Amendment – as early as 1979.  *See Bell v. Wolfish,* 441 U.S. 520, 535, n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  In addition, the Seventh Circuit has repeatedly concluded that disregarding inmate complaints of severe pain constitutes deliberate indifference. *See Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002); *Sherrod v. Lingle,* 223 F.3d 605,

611-12 (7th Cir. 2000); *Jones v. Simek,* 193 F.3d 485, 490 (7th Cir. 1999).  Because these cases

are clearly analogous to the present matter, Defendants had fair warning that their treatment of

Cobige was unconstitutional.  *See Hope*, 536 U.S. at 740-41; *Wheeler*, 539 F.3d at 640.

      Defendants nonetheless argue that Plaintiff cannot show that it was clearly established

that an arrestee who was suffering from stomach cramps would be constitutionally entitled to

medical care.  Defendants misstate the standard and downplay Cobige's medical condition.  The

standard is that a "plaintiff must show, on some level, that a violation of this right has been

found in factually similar cases, or that the violation was so clear that a government official

would have known that his actions violated the plaintiff's rights even in the absence of a

factually similar case."  *Lee,* 533 F.3d at 512.  In short, whether there is a "stomach cramps" case

exactly on point is not material to the Court's qualified immunity analysis.  *See McGreal v.

Ostrov,* 368 F.3d 657, 683 (7th Cir. 2004) ("The salient question is not whether there is a prior

case on all fours with the current claim but whether the state of the law at the relevant time gave

the defendants fair warning that their treatment of the plaintiff was unconstitutional.").  In sum,

qualified immunity does not shield Defendants Dimilanta, Czarniecki, Diaz, Lawler, and Motzny

from liability as to Count I of the Second Amended Complaint.

## II.     Conspiracy Claim – Count III

      In Count III of the Second Amended Complaint, Plaintiff alleges that Defendants

conspired to deny Cobige medical care in violation of 42 U.S.C. § 1983.  To establish a civil

conspiracy claim under Section 1983, Plaintiff must show that the individual Defendants agreed

to deprive Cobige of her constitutional rights.  *See Reynolds v. Jamison,* 488 F.3d 756, 764 (7th

Cir. 2007).  "To be liable as a conspirator you must be a voluntary participant in a common

venture, although you need not have agreed on the details of the conspiratorial scheme or even

know who the other conspirators are.  It is enough if you understand the general objectives of the

scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them."

*Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988).

Here, Plaintiff argues – without citation to the record – that "there exists a genuine issue

of material fact as to whether each of [sic] Defendants knew that Ms. Cobige was suffering

serious abdominal pain, and also that their fellow officers were aware of Ms. Cobige's suffering,

but impliedly consented not to help her."  (R. 137-1, Pl.'s Resp. Brief, at 11.)  Although there is

evidence in the record that certain Defendants knew Cobige was suffering from serious

abdominal pain, there is no evidence in the record that Defendants agreed at some level to

commit an unlawful act or that Defendants had a common objective or understanding to do

anything.  *See Redwood v. Dobson,* 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient

of a conspiracy [] is an agreement to commit some future unlawful act in pursuit of a joint

objective.").

Construing the facts – and all reasonable inferences – in Plaintiff's favor, Plaintiff has

failed to present evidence creating a genuine issue of fact for trial that Defendants conspired to

deny Cobige medical care.  In other words, Plaintiff's conclusory argument – without any factual

backing –  that Defendants impliedly conspired to deny Cobige medical treatment does not

defeat summary judgment.  *See Keri v. Board of Trs. of Purdue, Univ.,* 458 F.3d 620, 628 (7th

Cir. 2006); Fed.R.Civ.P. 56(e)(2).  Therefore, the Court grants Defendants' summary judgment

motion as Plaintiff's conspiracy claim as alleged in Count III of the Second Amended

Complaint.  **III.**          **Wrongful Death and Survival Act Claims – Counts VI and VII**

Next, Plaintiff brings a wrongful death claim pursuant to the Illinois Wrongful Death Act, 740 ILCS 180/1, and a claim under the Illinois Survival Act, 755 ILCS 5/27-6, based on Defendants' deliberate indifference to Cobige's medical needs.  "A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death; a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." *Wyness v. Armstrong World Indus.,* 131 Ill.2d 403, 410, 137 Ill.Dec. 623, 546 N.E.2d 568 (Ill. 1989).  Under the Illinois Wrongful Death Act, a plaintiff must ultimately establish that the: "(1) defendant owed a duty to decedent; (2) defendant breached that duty; (3) the breach of duty proximately caused decedent's death; and (4) pecuniary damages arising therefrom to persons designated under the Act." *Thompson v. City of Chicago,* 472 F.3d 444, 457 (7th Cir. 2006) (citation omitted).  An Illinois Survival Act claim "preserves the right of action for a personal injury that accrued before the death of the injured person and preserves causes of action relating to, *inter alia,* prolonged pain and suffering, which would otherwise be extinguished upon the injured party's death." *Cretton v. Protestant Mem. Med. Ctr., Inc.,* 371 Ill.App.3d 841, 847, 309 Ill. Dec. 422, 864 N.E.2d 288 (Ill.App.Ct. 2007).

Here, Defendants argue that Cobige's death was not caused by any wrongful act because Plaintiff cannot show that the claimed failure to render medical care to Cobige caused her death.[3] Put differently, Defendants argue that their acts or omissions did not proximately cause Cobige's death under the third element of an Illinois Wrongful Death Act claim.  Contrary to Defendants'

---

[3] Defendants do not address Plaintiff's Illinois Survival Act claim separately from Plaintiff's claim under the Illinois Wrongful Death Act.

20

assertion, there is evidence in the record creating a genuine issue of material fact for trial that

Cobige died of a fatal heart arrhythmia triggered by prolonged or severe abdominal pain.  (Pl.'s

Stmt. Facts ¶¶ 36, 37.)  There is also evidence in the record creating an issue of fact that had

Cobige been given pain medication, such as an analgesic, the stress on her heart – which was

caused by the severe and prolonged abdominal pain – would have been abated, and thus the

arrhythmia could have been prevented.[4]  (*Id.* ¶ 38.)  Defendants' argument that Cobige was not

experiencing pain immediately before she died is not only factually disputed, but does fulfill

Defendants' burden of establishing the lack of any genuine issue of material fact for trial.  *See*

*Celotex Corp*, 477 U.S. at 323.

Nonetheless, Defendants argue that they are immune from liability based on the Illinois

Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"),

740 ILCS 10/4-105, which states in relevant part:

> Neither a local public entity nor a public employee is liable for injury proximately
> caused by the failure of the employee to furnish or obtain medical care for a
> prisoner in his custody; but this Section shall not apply where the employee,
> acting within the scope of his employment, knows from his observation of
> conditions that the prisoner is in need of immediate medical care and, through
> willful and wanton conduct, fails to take reasonable action to summon medical
> care.

Under the Tort Immunity Act, willful and wanton conduct "means a course of action which

shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter

indifference to or conscious disregard for the safety of others or their property."  745 ILCS 10/1-

---

[4] Defendants' perfunctory arguments concerning Plaintiff's expert witness made for the
first time in their reply brief are waived.  *See Bodenstab v. County of Cook,* 569 F.3d 651, 658
(7th Cir. 2009).  In addition, Defendants' arguments under Federal Rule of Evidence 702 are
more appropriately brought in a *Daubert* motion.  *See, e.g., BP Amoco Chem. Co. v. Flint Hills
Res., LLC,* 615 F.Supp. 2d 765, 778 (N.D. Ill. 2009).

210; *Murray v. Chicago Youth Ctr.,* 224 Ill.2d 213, 235, 309 Ill. Dec. 310, 864 N.E.2d 176 (Ill.

2007).  Whether an action amounts to willful and wanton conduct is usually a question of fact for

the jury and rarely should be ruled upon as a matter of law.  *See id.* at 245.

 The Seventh Circuit has held that the willful and wanton standard is "remarkably" similar

to the deliberate indifference standard used in the denial of medical care claims.  *See Williams,*

509 F.3d at 404-05; *Chapman v. Keltner,* 241 F.3d 842, 847 (7th Cir. 2001); *see also Bragado v.*

*City of Zion Police Dep't,* 788 F.Supp. 366, 372 (N.D. Ill. 1992).  As discussed in detail above,

Plaintiff has raised a genuine issue of material fact for trial that Defendants Dimilanta,

Czarniecki, Diaz, Motzny, and Lawler were deliberately indifferent to Cobige's serious medical

needs.  Given the similarity of these standards, Plaintiff has raised a genuine issue of material

fact for trial that Defendants' conduct was willful and wanton, and thus the Tort Immunity Act

does not apply under the circumstances.  *See Chapman,* 241 F.3d at 847; *see also Hayes,* 546

F.3d at 522 ("a prisoner's medical need is 'serious' where 'the failure to treat a prisoner's

condition could result in further significant injury or the unnecessary and wanton infliction of

pain.'").  Therefore, the Court denies Defendants' summary judgment motion as to Counts VI

and VII of the Second Amended Complaint.

**IV.** **Intentional Infliction of Emotional Distress Claim – Count V**

 Finally, in Count V of the Second Amended Complaint, Plaintiff alleges a common law

claim of intentional infliction of emotional distress ("IIED") based on the severe emotional

distress Cobige experienced before her death.  *See Malone v. Nielson,* 474 F.3d 934, 937 (7th

Cir. 2007) ("In Illinois, personal injury suits survive the plaintiff's death and inure to the benefit

of the plaintiff's estate.").  To establish a claim of IIED under Illinois law, a plaintiff must show

that:  (1) the actor's conduct was truly extreme and outrageous; (2) the actor either intended that

his conduct cause severe emotional distress or had a reckless disregard of the probability of

causing emotional distress; and (3) the actor's conduct caused severe emotional distress.  *See*

*Lewis v. School Dist. #70,* 523 F.3d 730, 746 (7th Cir. 2008); *Hunt-Golliday v. Metropolitan*

*Water Reclamation Dist.,* 104 F.3d 1004, 1016 (7th Cir. 1997);  *McGrath v. Fahey,* 126 Ill.2d

78, 86, 127 Ill.Dec. 724, 533 N.E.2d 806 (Ill. 1988).

### A.      Extreme and Outrageous Conduct

"[T]o meet the threshold for intentional infliction of emotional distress, the defendant's

conduct must extend beyond the bounds of human decency and be considered intolerable in a

civilized community."  *Lewis,* 523 F.3d at 747; *Kolegas v. Heftel Broad. Corp*., 154 Ill.2d 1, 21,

180 Ill.Dec. 307, 607 N.E.2d 201 (Ill. 1992).  In determining whether conduct is extreme and

outrageous under the first IIED element, courts use an objective standard based on all the facts

and circumstances of a particular case.  *See Lewis,* 523 F.3d at 747.  "The Supreme Court of

Illinois has described a number of nonexclusive factors that may inform this analysis, including:

the degree of power or authority which a defendant has over a plaintiff; whether the defendant

reasonably believed that his objective was legitimate; and whether the plaintiff is particularly

susceptible to emotional distress because of some physical or mental condition or peculiarity."

*Lewis*, 523 F.3d at 747; *see also McGrath,* 126 Ill.2d at 86-90.  In addition, "[a] pattern, course,

and accumulation of acts can make an individual's conduct 'sufficiently extreme to be

actionable, whereas one instance of such behavior might not be.'"  *Feltmeier v. Feltmeier,* 207

Ill.2d 263, 274, 278 Ill.Dec. 228, 798 N.E.2d 75 (Ill. 2003) (citation omitted).

Examining the facts and circumstances of Cobige's confinement and medical needs at the

25th District Police Station lockup before she died, there is sufficient evidence in the record creating a genuine issue of material fact for trial that Defendants' conduct was extreme and outrageous.  First, looking to the relationship between Defendants and Cobige, Defendants had complete authority over Cobige because she was incarcerated as a pretrial detainee in lockup. *See Lopez*, 464 F.3d at 721 ("[t]he more control which a defendant has over the plaintiff, the more likely that defendant's conduct will be deemed outrageous") (citation omitted).  Evidence in the record also supports the reasonable inference that Defendants knew Cobige was susceptible to emotional stress due to her extreme abdominal pain and constant requests for medical care.  *See McGrath,* 126 Ill.2d at 90 ("Behavior which (though rude, abrasive or extremely inconsiderate) may not otherwise be actionable may be deemed outrageous if the defendant knows that the plaintiff is peculiarly susceptible to emotional distress.").  In addition, Defendants' repeated denial of medical care and their indifference to Cobige's medical needs was sufficiently extreme to be actionable.  *See Feltmeier,* 207 Ill.2d at 274; *see also Pavlik v. Kornhaber,* 326 Ill.App.3d 731, 745-46, 260 Ill.Dec. 331, 761 N.E.2d 175 (Ill.App.Ct. 2001) (Illinois courts hold that "repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones").  Thus, construing the evidence in the record and all reasonable inferences in Plaintiff's favor, there are genuine issues of material fact for trial whether Defendants' conduct was extreme and outrageous under the first element of an Illinois IIED claim.

### B.      Intent to Cause or Reckless Disregard

Under the second element, Plaintiff must set forth evidence creating a genuine issue of material fact for trial that Defendants either intended that their conduct would cause severe

emotional distress or that they had a reckless disregard of the probability of causing emotional distress. *See Lewis,* 523 F.3d at 746; *Hunt-Golliday,* 104 F.3d at 1016.  In determining whether Defendants had a reckless disregard of the probability that their conduct would cause emotional distress, the Supreme Court of Illinois has held that "[l]iability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it." *Public Fin. Corp. v. Davis,* 66 Ill.2d 85, 90, 4 Ill.Dec. 652, 360 N.E.2d 765 (Ill. 1976).  Meanwhile, as the Seventh Circuit instructs, "[c]ourts have generally found this element to be satisfied either when a defendant's actions, by their very nature, were likely to cause severe distress or when the defendant knew that a plaintiff was particularly susceptible to such distress and that, because of this susceptibility, the defendants actions were likely to cause it to occur." *Honaker v. Smith,* 256 F.3d 477, 494 (7th Cir. 2001).

Viewing the evidence and inferences in Plaintiff's favor, a reasonable jury could conclude that Defendants knew that their disregard of Cobige's serious medical needs would likely cause severe emotional distress.  *See id.*  In other words, a reasonable jury could find that Defendants' reckless conduct in denying Cobige medical care for her serious medical condition exhibited a deliberate disregard of the probability that Cobige would suffer emotional distress. *See Vance v. Chandler,* 231 Ill.App.3d 747, 752, 173 Ill.Dec. 525, 597 N.E.2d 233 (Ill.App. Ct. 1992) (citing Restatement (Second) of Torts § 46, comment i); *see also Public Fin. Corp.,* 66 Ill.2d at 90. Thus, there are genuine issues of material fact supporting the second IIED element.

### C.     Severity of Emotional Distress

Next, under the third element of an IIED claim, Plaintiff must present evidence creating a genuine issue of material fact for trial that Defendants' conduct caused Cobige's severe

25

emotional distress.  *See Honaker*, 256 F.3d at 495 ("third element of the tort focuses on the severity of the emotional distress").  Again, Plaintiff has presented sufficient evidence creating a genuine issue of material fact that Cobige suffered severe emotional distress as a result of Defendants' extreme and outrageous conduct.

As Plaintiff points out, Cobige cannot testify to the severe emotional distress she suffered, however, "Illinois cases have noted the principle," that "in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed."  *Id.* at 496 (citations omitted).  "These cases have acknowledged that, even when significant evidence was not presented as to the severity of distress, the very nature of the conduct involved may be evidence of its impact on the victim."  *Id.*  As such, Illinois courts tend to "merge the issue of the outrageousness of the defendant's conduct with the issue of the severity of the plaintiff's emotional distress, in effect requiring more evidence of outrageousness the weaker the evidence of distress."  *Id.* (quoting *Bristow v. Drake Street, Inc.,* 41 F.3d 345, 350 (7th Cir. 1994)).

As discussed, Defendants had complete control over Cobige before she died in lockup and there is an issue of fact whether they were aware that Cobige was susceptible to emotional distress due to the outward signs of her severe abdominal pain.  Despite these circumstances, Defendants ignored Cobige's repeated requests for medical treatment and ultimately denied her medical care.  Given the issues of fact regarding whether Defendants ignored Cobige's serious medical needs while she was suffering in lockup prior to her death, Plaintiff has created a genuine issue of fact that Cobige suffered severe emotional distress.  *See Bristow,* 41 F.3d at 350; *Kolegas,* 154 Ill.2d at 25; *Wall v. Pecaro,* 204 Ill.App. 3d 362, 369, 149 Ill.Dec. 388, 561

N.E.2d 1084 (Ill.App.Ct. 1990); *see also* Restatement (Second) of Torts § 46, comment j.

Therefore, Plaintiff has fulfilled the third element of his IIED claim.

### D.    Illinois Tort Immunity Act

Finally, as with Plaintiff's other state law claims, Defendants maintain that they are immune from liability under the Illinois Tort Immunity Act.  As discussed above, because Plaintiff has raised a genuine issue of material fact for trial that Defendants Dimilanta, Czarniecki, Diaz, Motzny, and Lawler were deliberately indifferent to Cobige's serious medical needs, Plaintiff has also raised a genuine issue of material fact for trial that Defendants' conduct was willful and wanton.  *See Chapman,* 241 F.3d at 847; *see also Burke v. 12 Rothschild's Liquor Mart, Inc.,* 148 Ill.2d 429, 451, 170 Ill. Dec. 633, 593 N.E.2d 522 (Ill. 1992) ("Willful and wanton conduct is found where an act was done with actual intention or with a conscious disregard or indifference for the consequences when the known safety of other persons was involved.") (internal quotation marks omitted and citation omitted).  Therefore, the Illinois Tort Immunity Act does not relieve Defendants of liability under the circumstances.

### CONCLUSION

For the foregoing reasons, the Court grants Defendant City of Chicago's Motion for Summary Judgment (R. 117) and Defendants Dwayne Collier's and Nicole Henry's Motion for Summary Judgment (R. 123) in their entirety.  The Court grants in part and denies in part the individual Defendants' Motion for Summary Judgment.  (R. 122.)

**Date:** August 6, 2009

ENTERED

_____

**AMY J. ST EVE**
**United States District Court Judge**

27